NATALIE RENEE SHEPHERD
Los Angeles Legal Advocates
1025 W 190th St
Suite 400
Gardena, CA 90248
(905) 907-5309
NShepherd@LALegalAdvocates.com

*Attorneys for Petitioner*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| GENEROSO VELASQUEZ SALAZAR,<br><br>　　　　　　　Petitioner,<br><br>vs.<br><br>**GEORGE DEDOS, WARDEN**, CIBOLA COUNTRY CORRECTIONAL CENTER<br><br>**MARY DE ANDA-YBARRA,** DIRECTOR OF EL PASO FIELD OFFICE, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT;<br><br>**KRISTI NOEM,** SECRETARY OF THE U.S. DEPARTMENT OF HOMELAND SECURITY; AND<br><br>**PAM BONDI,** ATTORNEY GENERAL OF THE UNITED STATES,<br><br>　　IN THEIR OFFICIAL CAPACITIES,<br><br>　　　　　　　Respondents | PETITION FOR WRIT OF HABEAS CORPUS<br><br>ORAL ARGUMENT REQUESTED<br><br>Expedited Hearing Requested |

## INTRODUCTION

1.      Petitioner Generoso Velasquez Salazar is a long-time United States resident of nearly forty years, a devoted husband, father, and the sole caregiver to his ten-year-old U.S. citizen nephew following the recent death of the child's mother. Since entering the United States in the late 1980s, Petitioner has built a life defined by steady work, strong family bonds, and respect for the law (*See* Exhibit A ("Exh. A") Bond Packet Submitted to IJ July 28, 2025).

2.      He has been employed for years by Satsuma Landscape & Maintenance, where he is known as a skilled, reliable worker and a valued member of the community. His deep roots, family responsibilities, and clean record make clear that he poses no danger to the public, no threat to national security, and no risk of flight.

3.      Despite these facts, U.S. Immigration and Customs Enforcement ("ICE") is detaining Petitioner without bond under 8 U.S.C. § 1225 — a statute that, by its text, structure, and controlling precedent, applies only to certain recent entrants "seeking admission" to the United States.

4.      Petitioner, who has resided here continuously for decades, is subject instead to the discretionary detention framework of 8 U.S.C. § 1226, under which he is entitled to an individualized bond hearing. The Immigration Judge nevertheless refused to consider his eligibility for release, relying on the inapposite decision in *Matter of Q. Li* 28 I. & N. Dec. 168 (BIA 2020), to conclude that mandatory detention applied (*See* Exhibit B ("Exh. B") Bond Order).

5.      This unlawful application of § 1225 both violates the Immigration and Nationality Act and deprives Petitioner of his Fifth Amendment right to a meaningful custody

determination. The Court should grant the writ and order his immediate release, or, at minimum, a prompt and constitutionally adequate bond hearing.

## JURISDICTION

6. This action arises under the Constitution of the United States and the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 et seq.

7. This Court has subject matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I, § 9, cl. 2 of the United States Constitution (Suspension Clause).

8. This Court may grant relief under the habeas corpus statutes, 28 U.S.C. § 2241 et seq., the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., the All Writs Act, 28 U.S.C. § 1651, and the Immigration and Nationality Act, 8 U.S.C. § 1252(e)(2).

## VENUE

9. Venue is proper in this District under 28 U.S.C. § 1391(e) and 28 U.S.C. § 2241 because Petitioner is presently detained within this District at the Cibola County Correctional Center in Milan, New Mexico, which is within the jurisdiction of this Court.

10. Petitioner was initially taken into ICE custody in California, within the Ninth Circuit, pursuant to the same unlawful detention order that continues to keep him confined today.

11. Accordingly, although the immediate custodian is located within this District, the decision to detain Petitioner and the legal error underlying his custody originated within the Ninth Circuit.

12. Petitioner therefore expressly reserves the right to seek transfer of this action to the Central District of California under 28 U.S.C. § 1404(a), in the interest of justice and for the convenience of parties and witnesses.

### REQUIREMENTS OF 28 U.S.C. §§ 2241, 2243

13. The Court must grant the petition for writ of habeas corpus "forthwith" unless the petitioner is not entitled to relief. 28 U.S.C. § 2243.

14. Courts have long recognized the significance of the habeas statute in protecting individuals from unlawful detention. The Great Writ has been referred to as "perhaps the most important writ known to the constitutional law of England, affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963).

15. Petitioner is "in custody" within the meaning of 28 U.S.C. § 2241 because he is arrested and detained by Respondents at the Cibola County Correctional Center in Milan, New Mexico, pursuant to immigration detention authority. Petitioner challenges that custody as unlawful under the Constitution, federal law, and applicable treaties.

### PARTIES

16. Petitioner GENEROSO VELASQUEZ SALAZAR ("Petitioner") is a citizen of Mexico who is currently detained by Respondents at the Cibola County Correctional Center in Milan, New Mexico. Petitioner has been in the custody of the Department of Homeland Security ("DHS") and U.S. Immigration and Customs Enforcement ("ICE") since June 25, 2025, and remains detained pending the resolution of his immigration case.

17. Respondent GEORGE DEDOS in their official capacity as Warden, Cibola County Correctional Center, has immediate custody over Petitioner and is responsible for his detention.

18. Respondent MARY DE ANDA-YBARRA in their official capacity as the El Paso Field Office Director for Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement, is responsible for the custody, detention, and removal of noncitizens within this jurisdiction.

19. Respondent KRISTI NOEM, in their official capacity as Secretary of the U.S. Department of Homeland Security, is the head of DHS, which oversees ICE and is ultimately responsible for the unlawful detention of Petitioner.

20. Respondent PAM BONDI, in their official capacity as Attorney General of the United States, is charged with the administration and enforcement of the immigration laws and is a proper respondent under 28 U.S.C. § 2243.

## EXHAUSTION

21. Petitioner has filed a notice of appeal to the Board of Immigration Appeals ("BIA") challenging the Immigration Judge's denial of bond on August 18, 2025. (*See* Exhibit E ("Exh. E") Receipt of Notice of Appeal filed on August 18, 2025)

22. While this appeal is pending, Petitioner remains detained without any opportunity for release on bond.

23. Exhaustion of that administrative process is not required here.

24. Exhaustion under 28 U.S.C. § 2241 is prudential, not jurisdictional, and courts in this Circuit have repeatedly excused it where administrative review is inadequate, futile, or would cause irreparable harm. See *Salvador F.-G. v. Noem*, 2025 WL 1669356, at *4 (N.D.

Okla. June 12, 2025) (declining to require exhaustion where immigration detainee was "trapped in prolonged detention without a meaningful opportunity for bond"); *Quintana Casillas v. Sessions*, No. 17-cv-01395, slip op. at 9–11 (D. Colo. 2018) (explaining that when "the question presented is purely legal and has been repeatedly mishandled administratively, exhaustion serves no useful purpose").

25. In this circuit, the court has held that habeas corpus relief was available despite a pending BIA appeal, because "[e]ach additional day of detention without a bond hearing constitutes irreparable harm that cannot be remedied after the fact" *LG v. Choate*, No. 23-cv-00611, slip op. at 14 (D.N.M. 2024)

26. The BIA appeal process here exemplifies why exhaustion is unnecessary. As *Rodriguez v. Bostock* explained, while the BIA has occasionally remanded bond denials where immigration judges misapplied § 1225(b), it has declined to issue a precedential ruling. 779 F. Supp. 3d 1239, 1245 (W.D. Wash. 2025). Consequently, many immigration judges continue to deny bond altogether, and appeals typically take six months or more, during which noncitizens remain detained unlawfully, with severe consequences for their health, families, and ability to defend against removal. Id.

27. Because Petitioner's injury is the very fact of unlawful detention without a bond hearing, administrative remedies are neither timely nor effective. Habeas corpus is the only adequate remedy.

## LEGAL FRAMEWORK

28. Congress established two separate detention regimes. Section 1225 governs "applicants for admission" encountered at the border or its functional equivalent, while § 1226 governs individuals "already in the country." *Jennings v. Rodriguez*, 583 U.S. 281, 288–

89 (2018). These provisions are mutually exclusive: "[A] noncitizen cannot be subject to both mandatory detention under § 1225 and discretionary detention under § 1226." *Martinez v. Hyde*, No. 25-cv-11613, 2025 WL 2084238, at *8 (D. Mass. July 24, 2025).

29. Section 1225(b)(2)(A) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a."

30. Detention under § 1225(b) is therefore mandatory and individuals detained following examination under section 1225 can only be paroled into the United States "for urgent humanitarian reasons or significant public benefit." *Jennings*, 583 U.S. at 300, 138 S.Ct. 830 (quoting 8 U.S.C. § 1182(d)(5)(A)). This parole "into the United States" allows physical entry but reserves the Government's ability to treat the person as if "stopped at the border." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020).

31. Crucially, courts and the BIA have recognized that the phrase "seeking admission" carries an active, temporal component**:** it refers to individuals "coming or attempting to come into the United States," 8 C.F.R. § 1.2, i.e., those apprehended at or near the border and in the process of initial entry. *Martinez*, 2025 WL 2084238, at *6–7.

32. By contrast, § 1226 governs detention of noncitizens already present in the United States and apprehended on a warrant issued by the Attorney General. 8 U.S.C. § 1226(a). Unlike § 1225's mandatory scheme, § 1226(a) creates a discretionary framework, under which the Attorney General "may continue to detain," or "may release" a noncitizen on bond or conditional parole. Id.

33. Individuals detained under § 1226 are entitled to an individualized custody determination and may appeal that determination to an immigration judge. 8 C.F.R. § 1236.1(d)(1); see *Matter of Siniauskas*, 27 I. & N. Dec. 207, 207 (BIA 2018).

34. Courts in this Circuit have recognized that when detention is discretionary under § 1226(a), the government bears the burden of justifying continued detention by clear and convincing evidence that an individual poses a danger to the community or a flight risk. *LG v. Choate*, 976 F.3d 997, 1005–06 (10th Cir. 2020) (placing burden on the government to establish necessity of detention at a bond hearing); *Arostegui-Maldonado v. Baltazar*, No. 25-CV-2205-WJM-STV, 2025 WL 2280357, at *12 (D. Colo. Aug. 8, 2025) (following *Choate*).

35. Where the government fails to meet this burden, immigration judges must consider release, and noncitizens may present evidence that they are not dangerous or a flight risk. *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1244 (W.D. Wash. 2025). These protections ensure detention is not automatic but subject to an individualized assessment, consistent with the statutory framework of § 1226(a).

36. Some narrow mandatory detention categories exist under § 1226(c) for certain criminal or security grounds, but those are not implicated here.

37. Multiple recent decisions confirm that § 1225 does not apply to long-resident noncitizens apprehended in the interior. See *Carlos Javier Lopez Benitez v. Francis*, No. 25-cv-11517, 2025 WL 1869299, at *5–8 (D. Mass. July 7, 2025)( holding that § 1225(b)(2)(A) did not apply to a petitioner who had been residing in the United States for over two years; emphasizing that "seeking admission" requires an active, ongoing effort to enter, not mere presence in the country, and concluding that detention was governed by § 1226(a) with access to bond); *see also Rodriguez v. Bostock*, F. Supp. 3d, 2025 WL 1193850, at *12–16

(W.D. Wash. Apr. 24, 2025) (finding that a non-citizen apprehended from within the United States and charged with inadmissibility was necessarily detained under section 1226, rather than section 1225); *Gomes*, 2025 WL 1869299 at *5–8 (same).

38. As those courts recognized, interpreting § 1225 to cover all noncitizens who were never formally "admitted" would collapse the statutory distinction, render § 1226 superfluous, and contradict longstanding DHS practice. *See Martinez,* 2025 WL 2084238, at *8 ("This tension between sections 1225 and 1226 motivates the conclusion that they apply to different classes of aliens"); *Gomes v. Hyde*, 2025 WL 1869299, at *5–8 (D. Mass. July 7, 2025); *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386, 133 S.Ct. 1166, 185 L.Ed.2d 242 (2013).

39. Courts have distilled two central principles:

    a. Geographic/temporal limits: § 1225 applies only to noncitizens apprehended at or near the border and in the act of entry (see *Thuraissigiam*, 591 U.S. 103, 114, 139 (2020)), not to those apprehended years later in the interior.

    b. Statutory structure: Reading § 1225 as covering all noncitizens who were never lawfully "admitted" would render § 1226 largely meaningless, contrary to the rule against surplusage. See *Martinez*, 2025 WL 2084238, at *7; *Gomes v. Hyde*, No. 25-cv-11571, 2025 WL 1869299, at *6–8 (D. Mass. July 7, 2025).

40. As set forth below, applying this framework compels the conclusion that Petitioner's detention cannot fall under § 1225. Having resided in the United States for decades, with no connection to a border encounter or recent entry, he falls squarely within the discretionary scheme of § 1226. Respondents' reliance on § 1225 is therefore legally untenable.

## FACTUAL BACKGROUND

41. Generoso Velasquez Salazar has called the United States home for more than three decades.

42. Since entering the country around 1988–1989 in search of a better future, he has obeyed the laws and regulations of his adopted home and built a life defined by steady work, family devotion, and deep community ties.

43. He has been married to María Rubio for over thirty years, and together they raised two U.S. citizen children: Eric Velasquez, born in Los Angeles in 1993, who tragically passed away in 2024 after a prolonged illness, and Brenda Velasquez, born in Los Angeles in 1995.

44. Following the recent death of his wife's sister, Mr. Velasquez and his wife also assumed guardianship of their young U.S. citizen nephew, providing him with the care and stability he would otherwise lack.

45. That stability is now under severe threat. The 10-year-old nephew faces the possibility of losing his school, his visits to the park, and his access to regular medical care — all because his sole provider has been detained without bond.

46. The disruption to this child's life compounds the hardship already endured from his mother's death and underscores the profound human cost of detaining Mr. Velasquez, who has lived peacefully and respectfully in the United States for nearly forty years.

47. Mr. Velasquez is a valued employee of Satsuma Landscape & Maintenance, where he is known as a highly skilled and dependable worker with strong relationships with both his employer and coworkers.

48. On June 25, 2025, Petitioner was arrested without a warrant while performing his landscaping job for Satsuma Landscape & Maintenance at 1st and Alameda Streets in the

City of Industry, California. He was immediately transferred to the Enhanced Hardened Facility in El Paso, Texas, where DHS generated paperwork, issuing an arrest warrant/ Notice to Appear and charging him with removability. The charging document itself alleges that Petitioner is "present in the United States without admission or parole," language that presumes long-term residence in the interior and confirms that he was not in the process of seeking admission at the border (*See* Exhibit C ("Exh. C") Notice to Appear).

49. This sort of warrantless workplace arrest is precisely the type of non-individualized enforcement action that the U.S. District Court for the Central District of California — the district in which Petitioner was apprehended — has since enjoined in *Vasquez-Perdomo v. Noem*, No. 2:25-cv-05605-MEMF-SP (C.D. Cal. July 11, 2025) (granting TRO against suspicionless immigration enforcement stops, and barring reliance on factors such as race, language, accent, location, or occupation).

50. DHS's own "Encounter Details" sheet further records the incident as part of the "ERO Criminal Alien Program," even though Petitioner has never been arrested or convicted of any crime (*See* Exhibit D "Exh. D" Encounter Details).

51. Petitioner was subsequently transferred to the Cibola County Correctional Center in Milan, New Mexico, where he remains detained.

52. On July 28, 2025, Petitioner, through counsel, submitted a comprehensive packet of evidence in support of his release on bond under 8 U.S.C. § 1226(a) (See Exh. A). This evidence included income tax returns, pay stubs, proof of continuous residence for nearly forty years, proof of address, letters of support from family members and members of the community, and a letter from his long-term employer attesting to his reliability and character. Counsel also represented that Petitioner has no criminal record, and the Government

submitted no evidence to the contrary. Collectively, these materials directly addressed the statutory factors and established that Petitioner poses no danger to persons or property, presents no threat to national security, and is not a flight risk. See *Matter of Siniauskas*, 27 I. & N. Dec. 207, 207 (B.I.A. 2018).

53. On July 30, 2025, a bond hearing was held before Immigration Judge Hon. Samuel G. Williams. Despite the extensive evidence of eligibility for bond, the IJ declined to conduct an individualized custody determination. Instead, citing *Matter of Q. Li*, the IJ concluded that he lacked jurisdiction to consider bond because Petitioner was subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A).

54. On July 31, 2025, the Department of Homeland Security issued a Notice to Appear charging Petitioner as removable under INA § 212(a)(6)(A)(i) ("alien present without admission or parole"). Removal proceedings remain ongoing.

55. Petitioner, through counsel, has appealed the IJ's denial of bond to the Board of Immigration Appeals ("BIA"), where the matter is currently pending. Meanwhile, Petitioner remains confined at Cibola County Correctional Center in Milan, New Mexico, under unlawful mandatory detention. His prolonged detention without a meaningful bond hearing continues to inflict severe harm on both him and his dependent ten-year-old U.S. citizen nephew.

## CLAIMS FOR RELIEF

### COUNT ONE

### UNLAWFUL DETENTION UNDER 8 U.S.C. § 1225; CUSTODY PROPERLY GOVERNED BY 8 U.S.C. § 1226
*(Misapplication of Mandatory Detention Statute)*

56.     Petitioner re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

57.     Petitioner is currently being detained without the possibility of bond under 8 U.S.C. § 1225(b)(2)(A), based on the Immigration Judge's finding that he is "an Applicant seeking Admission under the provisions of Sec. 235(b)(2)(A) of the Immigration and Nationality Act ('INA')." The IJ's order stated: *"Respondent entered the U.S. without inspection and was later apprehended after contact with Border Patrol Officials. The Court finds that jurisdiction is limited under Matter of Q. Li due to current caselaw showing that the Respondent is an Applicant seeking Admission under the provisions of Sec. 235(b)(2)(A) of the Immigration and Nationality Act ('INA')."*

58.     That conclusion is legally erroneous. Section 1225 applies to noncitizens actively "seeking admission" at the border or its immediate functional equivalent. By contrast, § 1226 governs the arrest and detention of those "already in the country" pursuant to a warrant issued by the Attorney General. The two provisions are mutually exclusive. See *Jennings v. Rodriguez*, 583 U.S. 281, 288–89 (2018); *Matter of M-S-*, 27 I. & N. Dec. 509, 516 (A.G. 2019).

59.     Petitioner plainly falls within § 1226. He has resided in the United States for nearly forty years, with deep community and family ties, long-term employment, and no

criminal record. He was arrested without a warrant on June 25, 2025[1], while performing his landscaping job for Satsuma Landscape & Maintenance in the City of Industry, California—hundreds of miles from any border or port of entry—and immediately transferred to El Paso, where DHS generated paperwork issuing a Warrant/Notice to Appear and charged him with removal.

60.     The charging document itself expressly alleges that Petitioner is "present in the United States without admission or parole," language that presumes residence in the interior and confirms that he was not in the process of seeking admission. DHS's "Encounter Details" sheet inexplicably labeled the incident as part of the "ERO Criminal Alien Program," even though Petitioner has never been arrested or convicted of any crime. Taken together, these contradictions underscore the arbitrariness of Petitioner's detention and the government's mischaracterization of his case.

61.     The IJ's reliance on *Matter of Q. Li*, 28 I. & N. Dec. 168 (BIA 2020), is misplaced. In *Q. Li*, the respondent was apprehended within 100 yards of the border, mere hours after entry, and paroled under § 1182(d)(5)(A) before re-arrest. She squarely fit the definition of an "arriving alien" and was actively "seeking admission." Petitioner, by contrast, had lived in the U.S. for decades, was not paroled, and was arrested in the interior

---

[1] Petitioner's workplace arrest also exemplifies the very practices the U.S. District Court for the Central District of California – the district where arrest occurred -- has recently enjoined. In *Vasquez-Perdomo v. Noem*, the court issued a Temporary Restraining Order prohibiting DHS and ICE from conducting suspicionless enforcement stops in California, including reliance on race, language, accent, location, or occupation. Petitioner was arrested in the course of his landscaping work, precisely the kind of non-individualized, occupation-based enforcement action that the court condemned. *Vasquez-Perdomo v. Noem*, No. 2:25-cv-05605-MEMF-SP (C.D. Cal. July 11, 2025)

and issued a warrant. The factual predicates that justified applying § 1225 in *Q. Li* are entirely absent here.

62. Recent precedent confirms that long-term residents like Petitioner are detained under § 1226, not § 1225. In *Lopez Benitez v. Francis*, No. 25-cv-10960, 2025 WL 4094843 (D. Mass. July 8, 2025), the court held that a noncitizen who had lived in the U.S. just over two years was governed by § 1226, rejecting the government's argument that unlawful presence alone made him "seeking admission." Similarly, in *Martinez v. Hyde*, No. 25-cv-11613, 2025 WL 2084238 (D. Mass. July 24, 2025), the court concluded that § 1225(b) "had no application" to a person already residing in the U.S., even though she was charged as inadmissible under INA § 212(a)(6)(A)(i). And in *Rodriguez v. Bostock*, No. 25-cv-524, 2025 WL 1193850 (W.D. Wash. Apr. 24, 2025), the court emphasized that interior arrests for inadmissibility grounds are necessarily governed by § 1226.

63. Petitioner's case is even stronger than *Benitez* or *Martinez*. Whereas those petitioners had been present for only a few years, Petitioner has lived continuously in the U.S. for nearly four decades, with an extensive record of residence, employment, and family ties. If § 1226 applied in those cases, it applies a fortiori here.

64. To hold otherwise would effectively erase the statutory line between §§ 1225 and 1226, converting virtually all noncitizens present without admission into mandatory detainees and rendering § 1226(a) a dead letter. Courts have consistently rejected this outcome. See *Martinez*, 2025 WL 2084238, at *7 (rejecting interpretation that would "nullify" Congress's amendment to § 1226(c)); *Gomes v. Hyde*, No. 25-cv-11571, 2025 WL 1869299, at *7 (D. Mass. July 7, 2025) (noting that §§ 1225 and 1226 "apply to different classes" of noncitizens).

65. In sum, Petitioner was not "seeking admission" within the meaning of § 1225(b) but was "already in the country" within the meaning of *Jennings*, 583 U.S. at 288–89. His custody is governed by § 1226(a), under which detention is discretionary and subject to individualized bond hearings. The IJ's contrary ruling was contrary to law, unsupported by the record, and must be set aside.

## COUNT TWO
### VIOLATION OF THE FIFTH AMENDMENT DUE PROCESS CLAUSE IN THE BOND PROCEEDINGS

66. Petitioner re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

67. The Fifth Amendment's Due Process Clause applies to "all 'persons' within the United States," regardless of immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). It prohibits the federal government from depriving any person of liberty without due process of law.

68. Even in the immigration context, due process requires that when detention is discretionary, the individual is entitled to an individualized custody determination before a neutral decisionmaker, supported by reliable evidence, and applying the correct legal standards. See *Matter of Siniauskas*, 27 I. & N. Dec. 207, 207 (B.I.A. 2018) (citing *Matter of Fatahi*, 26 I. & N. Dec. 791, 793–94 (B.I.A. 2016); *Matter of Adeniji*, 22 I. & N. Dec. 1102, 1112–13 (B.I.A. 1999), modified on other grounds, *Matter of Garcia Arreola*, 25 I. & N. Dec. 267 (B.I.A. 2010)).

69. On July 28, 2025, Petitioner submitted substantial evidence directly addressing the statutory factors under § 1226(a). This included: letters from his long-term employer

attesting to his reliability and character; documentation of his continuous residence in the United States for over three decades; proof of close family ties—including his role as the sole caregiver to his 10-year-old U.S. citizen nephew; and confirmation that he has no criminal record. (*See* Exh. A) Collectively, this evidence demonstrated that Petitioner poses no danger to persons or property, presents no threat to national security, and is not a flight risk. See *Siniauskas*, 27 I. & N. Dec. at 207. The Immigration Judge, however, refused to consider any of this evidence, relying solely on the erroneous conclusion that mandatory detention applied.

70. On July 30, 2025, Petitioner appeared before Immigration Judge Samuel G. Williams for a custody hearing. Rather than conducting the individualized custody determination required by § 1226(a) and its implementing regulations, the IJ concluded—based on *Matter of Q. Li*—that he lacked jurisdiction to grant bond, finding Petitioner subject to mandatory detention under § 1225(b)(2)(A). As a result, the IJ failed to assess whether Petitioner posed any danger to the community, threat to national security, or risk of flight.

71. This was a constitutional error. By misclassifying Petitioner's detention as mandatory under § 1225, the IJ denied him any meaningful opportunity to present evidence on the statutory factors for release, deprived him of an individualized hearing, and foreclosed the possibility of a reasoned custody determination.

72. DHS's own records highlight the arbitrariness of Petitioner's detention. On the one hand, the charging document expressly alleges that he is "present in the United States without admission or parole," language that presumes interior residence and confirms his custody should fall under § 1226. On the other hand, DHS's "Encounter Details" sheet labeled the incident as part of the "ERO Criminal Alien Program," despite the absence of any criminal history. This contradictory paperwork is not harmless. By mischaracterizing

Petitioner as both a criminal alien and an arriving alien, DHS denied him the process to which he is entitled — including consideration for release on bond — and exemplified the arbitrary government action the Fifth Amendment prohibits.

73.     The prejudice to Petitioner is profound. He has resided in the United States for nearly 40 years, has no criminal history, has maintained steady employment, and is the sole caregiver to his young U.S. citizen nephew. Had the IJ applied the correct legal framework under § 1226(a), the record overwhelmingly supports a finding that Petitioner should be released on reasonable bond or parole.

74.     The denial is not a harmless procedural defect. As courts in the Tenth Circuit explained, "the deprivation of a bond hearing itself is an injury," because it deprives the detainee of the opportunity to require the government to meet its burden. *LG v. Choate*, 744 F. Supp. 3d 1172, 1182 (D. Colo. 2024).

75.     In similar circumstances, courts have not hesitated to find due process violations when noncitizens were denied individualized bond determinations based on the misapplication of mandatory detention statutes. See *Lopez Benitez v. Francis*, No. 25-cv-10960, 2025 WL 4094843, at *9–10 (D. Mass. July 8, 2025) (finding due process violation where § 1225 was misapplied to deny bond hearing); *Martinez v. Hyde*, No. 25-cv-11613, 2025 WL 2084238, at *8 (D. Mass. July 24, 2025) (same); *Rodriguez v. Bostock*, No. 25-cv-524, 2025 WL 1193850, at *12–16 (W.D. Wash. Apr. 24, 2025) (finding due process violation where detainee within U.S. was denied a proper bond hearing).

76.     In sum, the IJ's refusal to conduct an individualized custody determination deprived Petitioner of his liberty without due process of law. This Court should order Petitioner's immediate release, or in the alternative, order a prompt bond hearing before a

neutral decisionmaker applying the correct legal standards under § 1226(a), with the government bearing the burden of justifying continued detention by clear and convincing evidence.

## COUNT THREE
## VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. § 706(2)

77.     Petitioner re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

78.     Under the Administrative Procedure Act ("APA"), a reviewing court shall "hold unlawful and set aside" agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

79.     By classifying Petitioner as subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) despite his decades-long residence in the United States, his apprehension in the interior, and his clear placement within the statutory framework of 8 U.S.C. § 1226(a), Respondents have acted contrary to the plain text of the statute, longstanding agency practice, and binding precedent.

80.     This misapplication of § 1225 constitutes agency action that is not in accordance with law and is arbitrary and capricious within the meaning of the APA. See, e.g., *Rodriguez v. Bostock*, 2025 WL 1193850, at *16 (W.D. Wash. Apr. 24, 2025) (finding that DHS's application of § 1225 to individuals apprehended inside the United States violated the APA).

81.     Accordingly, this Court should declare unlawful Respondents' determination that Petitioner is detained under § 1225, set aside that determination pursuant to the APA, and order Respondents to treat Petitioner's custody as governed by § 1226, entitling him to a bond hearing before a neutral decisionmaker.

**PRAYER FOR RELIEF**

WHEREFORE, Petitioner respectfully requests that this Court:

a. Declare that Petitioner's detention under 8 U.S.C. § 1225(b)(2)(A) is unlawful, and that his custody is properly governed by 8 U.S.C. § 1226(a);

b. Order Petitioner's immediate release from custody, with or without appropriate conditions of supervision;

c. In the alternative, order that Petitioner be provided a prompt and individualized bond hearing before a neutral Immigration Judge applying the proper standards under § 1226(a), with the Government bearing the burden of proving by clear and convincing evidence that continued detention is necessary to prevent flight or danger to the community;

d. Grant such other and further relief as the Court deems just and proper.

DATED: August 27, 2025

Respectfully submitted,

_____
NATALIE RENEE SHEPHERD
Los Angeles Legal Advocates
1025 W 190th St
Suite 400
Gardena, CA 90248
(905) 907-5309
NShepherd@LALegalAdvocates.com
*Attorneys for Petitioner*