UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

GENEROSO VELASQUEZ SALAZAR,

        Petitioner,

v.                                              No. 1:25-cv-00835-DHU-JMR

GEORGE DEDOS, Warden, Cibola County
Correctional Center; MARY DE ANDA-
YBARRA, Director of El Paso Field Office,
U.S. Immigration and Customs Enforcement;
KRISTI NOEM, Secretary of the U.S.
Department of Homeland Security; and
PAM BONDI, Attorney General of the
United States,
in their official capacities,

        Respondents.

## MEMORANDUM OPINION AND ORDER

      This matter is before the Court on Petitioner Generoso Velasquez Salazar's Petition for Writ of Habeas Corpus ("Petition"). Petitioner asks the Court to declare that Petitioner's detention under 8 U.S.C. § 1225(b)(2)(A) is unlawful, and that his custody is properly governed by 8 U.S.C. § 1226(a); to order Petitioner's immediate release from custody; or in the alternative, to order that Petitioner be provided a prompt and individualized bond hearing before a neutral Immigration Judge (IJ) applying the proper standards under § 1226(a), with the Government bearing the burden of proving by clear and convincing evidence that continued detention is necessary to prevent flight or danger to the community. Doc. 1 at 19. The Court held a hearing on the Petition on September 15, 2025, at which counsel for all parties were present. Having considered the parties' briefs, the parties' oral arguments, and the relevant and applicable law, the

1

Court found at the hearing that Petitioner's detention is rightfully governed by 8 U.S.C. § 1226(a), rather than § 1225(b)(2)(A), and ordered that he receive an individualized bond hearing under § 1226 no later than 7 days from the date of the hearing. In the absence of such a bond hearing, the Court ordered Petitioner's immediate release. The Court indicated at the hearing that it would supplement its Order to decide the issue of burden-shifting and to lay out its reasoning.

## I.
## BACKGROUND

### A. Removal and Bond Proceedings

Generoso Velazquez Salazar ("Petitioner") is a citizen of Mexico who entered the United States without inspection in the late 1980s. Doc. 1 at ¶¶ 16, 42. Since that time, Petitioner has married and raised two U.S. Citizen children and is now the guardian of his young U.S. citizen nephew after the recent death of his wife's sister. *Id.* at ¶¶ 43-44. On June 25, 2025, while performing his landscaping job at Satsuma Landscape & Maintenance, Petitioner was arrested without a warrant in the City of Industry, California. *Id.* at ¶ 48. He was immediately transferred to the Enhanced Hardened Facility in El Paso, Texas, where DHS generated paperwork, issuing an arrest warrant/Notice to Appear and charging him with removability. *Id.* On July 30, 2025, a bond hearing was held before an immigration judge (IJ). Petitioner was not released on bond and was subsequently transferred to Cibola County Correctional Center in Milan, New Mexico, where he continues to be held. *Id.* at ¶ 51.

Prior to his hearing before the IJ, Petitioner submitted to the immigration court a comprehensive packet of evidence in support of his release on bond under § 1226(a). *Id.* at ¶ 52 (citing Sealed Exhibit A). This evidence included proof of continuous residence since the 1980s, including income tax returns, pay stubs, and proof of address, as well as letters of support from family members and members of the community, and a letter from his long-term employer

2

attesting to his reliability and character. *Id.* Petitioner's counsel also represented that Petitioner had no criminal record, and the Government submitted no evidence to the contrary. *Id.* However, at the July 30 bond hearing, the IJ declined to conduct an individualized custody determination. *Id.* at ¶ 53. Instead, citing *Matter of Q. Li*, 29 I. & N. Dec. 66 (BIA 2025), the IJ concluded he lacked jurisdiction to consider bond because Petitioner was subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A). Doc. 1 at ¶ 53.

On July 31, 2025, the Department of Homeland Security issued a Notice to Appear charging Petitioner as removable under INA § 212(a)(6)(A)(i) ("alien present without admission or parole"). *Id.* at ¶ 54. Removal proceedings remain ongoing, and Petitioner has appealed the IJ's denial of bond to the Board of Immigration Appeals, where the matter is currently pending. In the meantime, Petitioner remains detained at Cibola Correctional Center. *Id.* at ¶ 55.

### B. Habeas Proceedings

On August 29, 2025, Petitioner filed a Petition for Writ of Habeas Corpus. The Petition alleges that Petitioner is being unlawfully detained without the possibility of bond under § 1225(b)(2)(A), and that such misapplication of the Immigration and Nationality Act ("INA")—and the resultant denial of an individualized bond hearing—violates Petitioner's Fifth Amendment Due Process rights and the Administrative Procedure Act. The Petition seeks a declaration that Petitioner's detention under § 1225 is unlawful and is properly governed by § 1226, and an order immediately releasing Petitioner from custody, or, in the alternative, an order that Petitioner be provided an individualized bond hearing before a neutral IJ under the standards set out in § 1226, "with the Government bearing the burden of proving by clear and convincing evidence that continued detention is necessary to prevent flight or danger to the community." *Id.* at 19.

On September 2, 2025, Petitioner filed an Emergency Motion for Temporary Restraining Order, requesting that this Court enjoin Petitioner's removal from the United States and transfer out of the District of New Mexico during the pendency of his habeas proceedings. *See generally* Doc. 4. After two hearings on September 4 and 5, this Court granted Petitioner's requested emergency relief. *See* Doc. 13.

On September 11, 2025, Respondents responded in opposition to Petitioner's Petition. In their response, Respondents do not dispute the applicability of § 1226 to Petitioner's removal proceedings or object to an additional bond hearing before an IJ. However, Respondents request that this Court deny the Petition, either in whole or in part, arguing that (1) whether Petitioner's detention should be governed by § 1225 or § 1226 is not ripe for review by this Court because it has not been fully litigated before the immigration court; (2) there is no legal support for Petitioner's request to shift the burden of proof to Respondents at future bond hearings; and (3) there is no legal support for Petitioner's request for immediate relief. Doc. 19 at 2.

Also on September 11, 2025, Respondent George Dedos filed a Notice of Joinder to the Federal Respondents' Response in Opposition to the Petition. Dedos is the warden of Cibola County Correctional Center, a private facility owned and operated by CoreCivic, Inc. pursuant to a detention services agreement with U.S. Immigration and Customs Enforcement ("ICE"). *See* Doc. 21.

Petitioner submitted his reply to Respondents on September 12, 2025, *see* Doc. 24, and the Court held a hearing on this matter on September 15, 2025.

## II.
## LEGAL STANDARD

Habeas relief is available when a person "is in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). Velasquez Salazar seeks habeas

relief, arguing he is being unlawfully detained in violation of the INA, his Fifth Amendment due process rights, and the Administrative Procedure Act. Doc. 1. at ¶¶ 58, 72, 80.

The INA contemplates two detention regimes for noncitizens pending removal proceedings. The first, § 1225, states that "in the case of [a noncitizen] who is an applicant for admission, if the examining immigration officer determines that [a noncitizen] seeking admission is not clearly and beyond a doubt entitled to be admitted, the [noncitizen] *shall* be detained" for removal proceedings. 8 U.S.C. § 1225(b)(2)(A) (emphasis added). This statute mandates detention for noncitizens to whom it applies.[1] Noncitizens detained under § 1225 are not entitled to bond hearings. *See Jennings v. Rodriguez*, 583 U.S. 281, 297, 138 S. Ct. 830, 842 (2018).

By contrast, § 1226 provides that "[o]n a warrant issued by the Attorney General, [a noncitizen] may be arrested and detained pending a decision on whether the [noncitizen] is to be removed from the United States." 8 U.S.C. § 1226(a) (emphasis added). Subject to some limited exceptions for noncitizens with certain criminal charges, arrests, or the like, *see* § 1226(c)[2], this section further provides that the Attorney General may release a noncitizen on bond or conditional parole. § 1226(a)(1)-(2). Under federal regulations, noncitizens detained under § 1226(a) are entitled to individualized bond hearings at the outset of detention. *Jennings*, 583 U.S. at 306, 138 S. Ct. at 847 (2018) (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)).

## III.
## DISCUSSION

### A. Justiciability

Before turning to the merits of Petitioner's Habeas Petition, the Court must address

---

[1] Section 1225(b)(2)(B) and (C) articulate some exceptions to mandatory detention that are not relevant here.
[2] Counsel for Petitioner has represented that Petitioner has no criminal record, and the information provided in Sealed Exhibit A tends to support this contention. The Government has provided no evidence to suggest Petitioner may be subject to § 1226(c).

5

Respondents' arguments that no case or controversy exists in this matter. Respondents do not seem to argue that Petitioner must exhaust his administrative remedies via BIA appeal. *See* Doc. 19 at 7.[3] Instead, Respondents first argue that that this case is not ripe for review as the issues—in particular, which statute should apply to Petitioner's detention—have not fully been litigated by an IJ. Doc. 19 at 7. However, Petitioner was denied the opportunity to present relevant facts and arguments about his eligibility for bond when the IJ concluded he had no jurisdiction to consider bond based on an erroneous application of *Matter of Q. Li*, which Respondents have conceded,[4] and the misclassification of Petitioner's detention under § 1225, rather than § 1226. Providing Petitioner with an additional bond hearing under § 1226 ensures that these facts and arguments can be properly assessed by an IJ in considering whether Petitioner should be released on bond—a remedy to which Respondents do not object.

Respondents also point out that they offered to jointly request a new bond review hearing before an IJ and that offer "does and/or would moot" Petitioner's Habeas Petition. The Court disagrees. A suit becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Chafin v. Chafin*, 568 U.S. 165, 172, 133 S. Ct. 1017, 1023 (2013). "Put another way, a case becomes moot when a plaintiff no longer suffers

---

[3] Even if the Respondents did argue that exhaustion is required, other district courts addressing this same issue have found administrative exhaustion is not required. *See Romero v. Hyde*, No. 25-11631-BEM, 2025 WL 2403827, at *5-8 (D. Mass. Aug. 19, 2025) (waiving exhaustion requirement because further BIA proceedings would be futile given the BIA's position articulated in *Matter of Q. Li*); *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1252-53 (W.D. Wash. 2025) (not requiring exhaustion when it will result in the irreparable injury of prolonged detention without a bond hearing); *Lopez-Campos v. Raycraft*, No. 2:25-cv-12486, 2025 WL 2396379, at *5 (E.D. Mich. Aug. 29, 2025) (finding exhaustion is not required on a due process challenge because the BIA lacks authority to review constitutional challenges).

[4] At the hearings before the Court on this matter, including on Petitioner's Emergency Motion for a Temporary Restraining Order, counsel for Respondents agreed that the IJ may have erroneously applied *Matter of Q. Li* to Petitioner's case.

actual injury that can be redressed by a favorable judicial decision." *Ind v. Colo. Dep't of Corr.*, 801 F.3d 1209, 1213 (10th Cir. 2015) (quotations omitted). Petitioner points out that Respondents' offer to jointly request a new bond hearing "comes with no defined date by which such a hearing would occur and no enforceable assurance that Petitioner will actually be reclassified under § 1226 rather than . . . the same erroneous reasoning" under § 1225. Doc. 24 at 2. It also requires Petitioner himself to take action to make the request for a hearing he should never have been denied in the first place. *See* Doc. 24 at 1. In the meantime, Petitioner continues to suffer harm each day he is unlawfully detained without a bond hearing. Without definite assurances of a prompt and appropriate bond hearing under § 1226, Petitioner retains a significant interest in the outcome of his Petition. Accordingly, this Court finds that Petitioner's Petition presents a live case or controversy and is not moot.

 B. Merits

  1) <u>Detention Under § 1225 vs. § 1226</u>

It is clear that § 1226, not § 1225, should have governed Petitioner's detention from the outset. As stated by the Supreme Court, "U.S. immigration law authorizes the Government to detain certain [noncitizens] *seeking admission* into the country under §§ 1225(b)(1) and (b)(2)" and to "detain certain [noncitizens] *already in the country* pending the outcome of removal proceedings under §§1226(a) and (c)." *Jennings*, 583 U.S. at 289, 138 S. Ct. at 838 (emphasis added). Noncitizens who are detained shortly after entry into the United States cannot be said to have "effected an entry" and remain, like a noncitizen detained at a port of entry, subject to § 1225 as a "[noncitizen] seeking admission into the country." *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140, 140 S. Ct. 1959, 1982 (2020) (quoting *Zadvydas v. Davis*, 533 U.S. 678, 693, 121 S. Ct. at 2500 (2001)). Once a noncitizen is within the United States, "[§]

7

1226 generally governs the process of arresting and detaining [these noncitizens] pending their removal." *Jennings*, 583 U.S. at 288, 138 S. Ct. at 837. The Supreme Court's understanding of these two statutes is consistent with the plain text of §§ 1225 and 1226, traditional canons of statutory construction, the statute's legislative history, and longstanding agency practice. *See Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1256-61 (W.D. Wash. 2025) (on a motion for preliminary injunction, finding a similarly situated plaintiff to Petitioner likely to succeed on the merits based on analysis of the two statutes' plain text, their relationship to one another, legislative history, and longstanding DHS practice).

Looking to the facts of this case, Petitioner alleges, and has provided supporting documentation to show, that he entered the United States in the late 1980s and has lived here since. Doc. 1 at ¶¶ 42-43. Petitioner was arrested in City of Industry, California—in Los Angeles County—while working his job at Satsuma Landscape and Maintenance. *Id.* at ¶ 48. Irrespective of Respondents' unsupported suggestion that Petitioner may have left and re-entered the country, *see* Doc. 19 at 3, n. 3, impacting his eligibility for bond, Petitioner was not detained at the border or shortly after entry into the country. This distinguishes this case from *Matter of Q. Li*, cited by the IJ in declining to exercise jurisdiction over Petitioner's bond review. DHS's own Notice to Appear alleges that Defendant is "present in the United States without admission or parole," not an "arriving alien." Doc. 1-3 (Exh. C). At the hearing for this matter, Respondents themselves acknowledged that it is "likely" Petitioner's case should be governed by § 1226. These facts point to Petitioner being present in the United States and subject to § 1226 rather than § 1225 as a noncitizen "seeking admission."

2) <u>Due Process</u>

Petitioner alleges that the Government's denial of a meaningful bond hearing, and his

continued detention without one, violates his due process rights. The Fifth Amendment's Due Process Clause prohibits the government from depriving any person of liberty without due process of law. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690, 121 S. Ct. at 2498 (2001).

The Due Process Clause's protections extend to all persons in the United States, including non-citizens, "whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* at 693. Respondents acknowledge that our immigration laws distinguish between noncitizens seeking entry into the country and those who are present within the U.S. after entry. *See* Doc. 19 at 5. Specifically, Respondents agree that noncitizens "detained pursuant to § 1226 are entitled additional due process considerations[.]" *Id.* Because this Court holds that § 1226 governs Petitioner's detention, the due process owed to Petitioner is that provided for in § 1226—namely, an individualized bond hearing before an IJ. *See Lopez-Campos v. Raycraft*, No. 2:25-cv-12486, 2025 WL 2396379, at *9 (E.D. Mich. Aug. 29, 2025). Having erroneously concluded that Petitioner was mandatorily detained under § 1225, the IJ in Petitioner's case declined to make an individualized assessment of whether Petitioner posed any danger to the community, threatened national security, or was at risk of flight. Thereafter, Petitioner's continued detention without the bond hearing that should have been provided to him pursuant to § 1226 constitutes an ongoing violation of his constitutional right to due process. *See id.* at *10; *Arostegui-Maldonado v. Baltazar*, No. 25-cv-2205-WJM-STV, 2025 WL 2280357, at *9 (D. Colo. Aug. 8, 2025)*; Rodrigues De Oliveira v. Joyce*, No. 2:25-cv-00291-LEW, 2025 WL 1826118, at *6 (D. Me. July 2, 2025).

The power of federal courts to issue injunctions to protect rights guaranteed by the Constitution has long been recognized. *See Maehr v. U.S. Dep't of* State, 5 F.4th 1100, 1106 (10th Cir. 2021) (citing *Bell v. Hood*, 327 U.S. 678, 684, 66 S. Ct. 773, 777 (1946)). And "[o]nce a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15, 91 S. Ct. 1267, 1276 (1971). It is the "nature of the violation" that "determines the scope of the remedy." *Id.* at 17. Pursuant to its broad equitable powers and to remedy this constitutional violation, this Court has Ordered that Petitioner be afforded a bond review hearing before a neutral IJ pursuant to § 1226(a), rather than § 1225.

   3) Administrative Procedure Act

Petitioner also asserts that his detention under § 1225 constitutes a violation of the Administrative Procedure Act ("APA"). Under the APA, a reviewing court shall "hold unlawful and set aside" agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Petitioner alleges that "Respondents have acted contrary to the plain text of the statute, longstanding agency practice, and binding precedent" by subjecting him to mandatory detention under § 1225 instead of providing him an individualized bond review under § 1226. Respondents' Response (Doc. 19) does not address Petitioner's APA claim. Given this Court's finding that Petitioner's detention was not in accordance with law, this Court also finds that Respondents' detention of Petitioner under § 1225 violates the APA.

C. **Remedy**

Having determined that Petitioner's detention should have been governed by § 1226 and

that the denial of a meaningful bond review and his resultant continued detention violates his due process rights, the Court agrees with the other district courts that have addressed similar cases and finds that Petitioner is entitled to a prompt individualized bond hearing before a neutral IJ. *See, e.g., Kostak v. Trump*, No. 3:25-1093, 2025 WL 2472136, at *4 (W.D. La. Aug. 27, 2025); *Lopez-Campos*, 2025 WL 2496379, at *10; *Rodriguez v. Bostock*, 779 F. Supp. 3d at 1263. The Court must now consider Petitioner's argument that, at such a bond hearing, the Government should "bear[] the burden of proving by clear and convincing evidence that continued detention is necessary to prevent flight or danger to the community." Doc. 1 at 19.

The statute is silent as to who bears the burden of proving a noncitizen's eligibility for bond under § 1226(a), but federal regulations and a BIA decision suggests that, under normal circumstances, the burden is on the noncitizen to demonstrate that their "release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8). *See also In Re Adeniji*, 22 I. & N. Dec. 1102, 1116 (BIA 1999).

But these are not normal circumstances. Here, the Court has determined that Petitioner has been unlawfully detained without due process in violation of his constitutional rights. Neither the Supreme Court nor the 10th Circuit has directly addressed whether the burden of proof should shift when a noncitizen has been unlawfully detained in violation of the Due Process Clause. This Court thus must independently assess what due process requires after Petitioner was unlawfully denied an opportunity to prove his eligibility for bond.

The cases cited by Petitioner on this issue take two different approaches to determining what process is due a noncitizen in a § 1226(a) bond hearing. The first, exemplified by *L.G. v. Choate*, applies the *Mathews v. Eldridge* framework, balancing (1) the private interest affected

11

by the official action, (2) the risk of erroneous deprivation of such interest through the procedures used and the probable value of additional or different procedural safeguards, and (3) the government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail. 424 U.S. 319, 335, 96 S. Ct. 893, 903 (1976). The second, exemplified by *Diaz-Ceja v. McAleenan*, follows the framework established for discerning what process is due for involuntary civil detainees awaiting trial or mental health treatment. *See, e.g., Addington v. Texas*, 441 U.S. 418, 425, 99 S. Ct. 1804, 1809 (1979). As discussed below, regardless of which test is utilized here, because this case involves a continuing constitutional violation, the Government should bear the burden of showing that Petitioner's continued detention is appropriate.

      Finding the Government should bear the burden of proof at a § 1226(a) custody hearing, the District Court in *L.G. v. Choate* recognized the "strong private interest in being free from civil detention." 744 F. Supp. 3d 1172, 1182 (D. Colo. 2024). The court found that the risk of an erroneous deprivation of this interest is reduced by shifting the burden of proof to the Government, given the difficulty of proving a negative (that a noncitizen is *not* a flight risk or danger to the community) compared to the resources available to the Government to gather information. *Id.* at 1183-84. On the third *Mathews* factor, the court found the burden of proving flight risk or danger minimal when the Government has had ample time—30 months—to gather information on a detained noncitizen. *Id.* at 1185. Finally, the court reasoned that while the Government certainly has an interest in ensuring appearances at hearings and protecting the community, there is no such interest without a showing that a noncitizen is, in fact, a flight risk or a danger to the community. *Id.*

This Court does not read *L.G. v. Choate* as standing for the proposition that the Government will always bear the burden of proof in § 1226(a) hearings, as Petitioner suggests. *See* Doc. 1 at ¶ 34. Nor does the Court adopt Respondents' reading of *Choate* that limits its analysis to cases of "prolonged detention." *See* Doc. 19 at 9. Sure, due process concerns and the required procedural protections may grow as the period of confinement grows, *Choate*, 744 F. Supp. 3d at 1184, but the fact-specific considerations of the *Choate* court under the *Mathews* framework apply equally to the facts here, even though Petitioner has been detained less than three months.

On the first *Mathews* factor, Petitioner's detention without due process has separated him from his family, including a young nephew for whom Petitioner is the sole provider. Doc. 1 at ¶ 45. This Court need not wait another six, twelve, or eighteen months to determine that the first *Mathews* factor weighs in Petitioner's favor. Petitioner's private interest in being free from detention—and unlawful detention at that—is at stake now. This factor cuts in Petitioner's favor.

Second, shifting the burden to the Government at a subsequent bond hearing likely will reduce the risk of the continuing erroneous deprivation of Petitioner's liberty interests. In preparation for his initial bond hearing before an IJ, Petitioner submitted a comprehensive packet with evidence supporting his release on bond. *Id.* at ¶ 52 (citing Sealed Exhibit A). This packet includes, among other things, pay stubs, tax returns, proof of address, and letters of support from family members, members of the community, and Petitioner's employer. *See* Sealed Exhibit A. These materials represent an attempt by Petitioner, in the first instance, to meet his burden of proving that he poses no danger to persons or property, presents no threat to national security, and is not a flight risk. *See* Doc. 1 at ¶ 52.

Based on the information before this Court, it does not appear these materials were considered by the IJ, who determined he lacked jurisdiction to conduct an individualized custody determination altogether. *Id.* at ¶ 53. Had Petitioner received the initial custody determination to which he was entitled under § 1226(a), the Government would have had the opportunity to cross-examine or rebut Petitioner's claims that he is not a flight risk or a danger to the community or to argue before the IJ that Petitioner failed to meet his burden to prove as much. Nearly two months after submitting them, Petitioner remains detained without meaningful consideration of these materials. The Government's conduct in this case is not an isolated incident, as cases like this one have cropped up across the country in recent weeks. *See generally Romero v. Hyde*, 2025 WL 2403827; *Lopez Benitez v. Francis*, No. 25 Civ. 5937, 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025); *Leal-Hernandez v. Noem*, No. 1:25-cv-02428-JRR, 2025 WL 2430025 (D. Md. Aug. 24, 2025); *Kostak*, 2025 WL 2472136; *Lopez-Campos*, 2025 WL 2496379; *Maldonado v. Olson*, No. 25-cv-3142, 2025 WL 2374411 (D. Minn. Aug. 15, 2025); *Rodriguez*, 779 F. Supp. 3d 1239. These cases raise serious concerns about Petitioner's access to a meaningful bond hearing. Requiring the Government to prove by clear and convincing evidence that Petitioner is a flight risk and/or a danger to the community ameliorates those concerns.

Finally, the Government's interest in detaining Petitioner only outweighs his liberty interests if he is a flight risk or a danger to his community. The Government's interest in ensuring appearance at hearings and protecting the community is certainly weighty. *See Choate*, 744 F.Supp.3d at 1185 (citing *Zadvydas*, 533 U.S. at 690, 121 S. Ct. at 2499). But this interest dissolves if a noncitizen is neither a flight risk nor dangerous. Shifting the burden to the Government to justify detention may actually promote the Government's separate interest in managing overcrowding at DHS detention facilities. *See Velasco Lopez v. Decker*, 978 F.3d 842,

854 (2d Cir. 2020). Here, where Petitioner has submitted materials attempting to show that he is neither a flight risk nor dangerous, the Court finds the Government has no interest in detaining Petitioner absent a showing by them that the Petitioner is, in fact, at risk of flight or a danger to the community. This finding supports shifting the burden to the Government during a subsequent bond hearing.

Nor does shifting the burden of proof impose an unreasonable administrative or fiscal burden on the Government. The Government has vast resources at its disposal to gather information about Petitioner's eligibility for bond. In addition, DHS was provided Petitioner's bond packet on July 28, 2025, Doc. 1. at ¶ 52, and Respondents were provided the packet again through these proceedings. *See* Sealed Exhibit A. The Government had over a month between Petitioner's arrest and his initial bond hearing to gather information. They were provided a comprehensive packet of materials about Petitioner in advance of his July 28 bond hearing. The Government has had sufficient opportunity to gather new information and analyze the information provided to them to bear the burden of justifying Petitioner's detention.

The Court in *Diaz-Ceja v. McAleenan* declined to apply the *Mathews* analysis to these types of cases, finding instead that the standard applied to involuntary civil detention pending trial or mental health treatment is more appropriate to pre-removal detention proceedings in the immigration context. No. 19-cv-00824-NYW, 2019 WL 2774211, at *9 (D. Colo. 2019). This framework simply considers the "government's and the individual's respective interests, and then consider[s] whether the existing process adequately balanced and protected the two." *Id.* In *Diaz-Ceja*, the Court found the Government's interest in ensuring appearance and protecting the community to be valid and compelling while also recognizing that "freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from

15

arbitrary governmental action." *Id.* (quoting *Foucha v. Louisiana*, 504 U.S. 71, 80, 112 S. Ct. 1780, 1785 (1992)).

Weighing these competing interests against each other, the *Diaz-Ceja* Court found that placing the burden on the noncitizen in that case to prove he should be released on bond under § 1226(a) contravened due process requirements. The court pointed out that there is no general interest in confining noncitizens while their removal proceedings are pending, and "allocating the burden to a noncitizen . . . assigns the risk of error to the party with the greater interest in their individual liberty as balanced against the Government's interests." *Id.* at *10. In line with the allocation of the burden in other civil detention contexts, the court held that the Government must justify pre-removal detention in § 1226(a) bond hearings. Several other district courts to consider this issue have come to the same conclusion. *See Darko v. Sessions*, 342 F. Supp. 3d 429, 435 (S.D.N.Y. 2018) (collecting cases).

The analytical framework applied in *Diaz-Ceja* also cuts in favor of shifting the burden in this case. The Government's interest in continuing to detain Petitioner is minimal unless they can show that Petitioner is at risk of flight and/or a danger to the community. Petitioner's interest in liberty, on the other hand, is particularly strong after nearly three months of detention, separated from his family and community, without the opportunity for a meaningful bond hearing. Given the Government's conduct thus far and the information that Petitioner has already provided to demonstrate his eligibility for bond, requiring Petitioner to bear the burden of proof at a future bond hearing does not "adequately balance[] and protect[]" Petitioner's interests against the Government's. *Diaz-Ceja*, 2019 WL 2774211, at *9. Shifting the burden to the Government is thus appropriate under this framework to ensure the protection of Petitioner's liberty interests.

Respondents attempt to distinguish the present case from those where the burden was shifted to the Government. They point to a "lack of consensus" about when it is appropriate to shift the burden to the government to justify detention and emphasize that courts have only considered shifting the burden in the case of prolonged detention. *See* Doc. 19 at 9 (citing *Basri v. Barr*, 469 F. Supp. 3d 1063, 1065-66 (D. Colo. 2020); *Diaz-Ceja*, 2019 WL 2774211, at *10, *12; *Molina v. Choate*, No. 19-cv-00207-GPG, 2019 WL 13214049, at *2-3 (D. Colo. 2019)). The Court agrees with Petitioner that the cases where the burden was shifted did not hinge on the duration of detention; rather, they independently assessed what due process requires, considering the length of detention among several other factors. Doc. 24 at 4. For example, the two cases cited by Respondent where the District Court declined to shift the burden, *Basri* and *Molina*, did not involve prior unlawful conduct or denial of due process by the Government—as is the case here. Petitioners in those cases instead argued as a general matter that it was unconstitutional to require the noncitizen to bear the burden of proof at § 1226(a) bond hearings. The *Basri* and *Molina* Courts declined to adopt such a rule, and this Court similarly declines to make such a broad-sweeping ruling.

The Supreme Court has stressed that "due process is flexible" and "calls for such procedural protections as the particular situation demands." *Jennings*, 583 U.S. at 314, 138 S. Ct. at 852 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S. Ct. 2593, 2600 (1972)). It demands a fact-specific analysis that may not result in much consensus across cases or courts or lend itself to widely generalizable rules. Applying either the *Mathews* or involuntary civil detention framework to the facts of this case supports shifting the burden to the Government in this § 1226(a) bond hearing. This Court therefore finds that the burden of proof at Petitioner's bond hearing should rest with the Government. The Court does *not* hold that the Government

17

should bear the burden of proof at all § 1226(a) bond hearings, nor does the Court express an opinion as to which of the above frameworks is most appropriate for analyzing § 1226 due process claims more broadly. However, under both frameworks, the facts in this case support shifting the burden to the Government to prove, by clear and convincing evidence, that Petitioner is at risk of flight and/or a danger to the community such that continued detention is necessary.

This relief most appropriately remedies the deprivation of Petitioner's due process rights thus far and ensures these rights are upheld moving forward. However, Petitioner has been unlawfully detained pursuant to § 1225 for nearly three months. Given the length of Petitioner's unlawful detention and the liberty interests at stake, time is of the essence. If a bond review is not provided promptly, Petitioner's continued detention cannot stand. The Court therefore orders that Petitioner receive an individualized bond hearing pursuant to § 1226(a) no later than September 22, 2025 (7 days from the date of the Court's Order at the hearing in this matter). If, on September 23, 2025, Petitioner has not been provided such a bond hearing, he shall be immediately released. *See Lopez-Campos*, 2025 WL 2496379, at *10 (ordering similar relief); *Kostak v. Trump*, 2025 WL 2472136, at *4 (ordering similar relief); *Lopez Benitez*, 2025 WL 2267803, at *14 (ordering immediate release).

## IV.
## CONCLUSION

**THEREFORE, IT IS ORDERED** that Petitioner's Petition for Writ of Habeas Corpus is **GRANTED**. For the reasons stated above, this Court **GRANTS** Petitioner's request for a bond hearing and **ORDERS** Respondents to provide Petitioner with an individualized bond hearing pursuant to § 1226(a) no later than 7 days from the date of the Court's Order at the September 15 Hearing in this matter. The Court further **GRANTS** Petitioner's request to shift the burden of proof in said bond hearing. Respondents shall bear the burden of justifying, by clear and convincing

18

evidence, Petitioner's continued detention. If Petitioner has not received a lawful bond hearing by September 23, 2025, this Court **ORDERS** that he be immediately released.

    **IT IS SO ORDERED.**

 

_____
HONORABLE DAVID H. URIAS
UNITED STATES DISTRICT JUDGE